```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MICHAEL ROST,                                      :
                        Plaintiff,                 :
v.                                                 :          OPINION AND ORDER
                                                   :
                                                   :          20 CV 10559 (VB)
LIBERTY COCA-COLA BEVERAGES, LLC,                  :
                        Defendant.                 :
--------------------------------------------------------------x
```

Briccetti, J.:

      Plaintiff Michael Rost brings this action against defendant Liberty Coca-Cola Beverages, LLC ("Liberty"), alleging he was discriminated against in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.

      Now pending is defendant's motion to dismiss, or alternatively, to stay this action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (Doc. #12).

      For the following reasons, the Court construes the motion as a motion to compel arbitration and GRANTS the motion.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The following factual background is drawn from the amended complaint ("AC"), and the parties' submissions in support of and in opposition to the pending motion.

      Plaintiff alleges that while he was employed by defendant, defendant discriminated against him by failing to support his efforts to discipline a female employee who he claims was insubordinate, rude, and insulting. According to plaintiff, defendant's gender-based

1

discrimination caused him substantial stress, which caused him to require disability-related leave and eventually culminated in his termination.

I.     The Solutions Program

In October 2017, defendant rolled out several new policies, including its so-called "Solutions Program." The Solutions Program provides a four-step alternate dispute resolution process for disputes between employees and Liberty. The steps include: (i) Open Door, (ii) HR Facilitation, (iii) Mediation, and (iv) Arbitration.

Step one—the "Open Door" step—involves "informal methods" for the resolution of "Issues" and encourages employees to "bring the Issue to the attention of his or her immediate supervisor." (Doc. #14 Ex. A ("Solutions Program") ¶ 2(A)). "If an Issue cannot be resolved through discussion with the immediate supervisor, or if such a discussion is inappropriate or infeasible, a Current Employee may escalate his or her Issue through two additional levels of management or contact Human Resources." (Id.). If the issue is not resolved through the Open Door step, either the employee or Liberty may proceed to the next step, "HR Facilitation."

In the HR Facilitation step, "the Human Resources staff will work with the individuals involved to try to resolve the Issue." (Solutions Program ¶ 2(B)). As part of this step, "Human Resources may propose potential solutions, [but] it does not make a decision that is imposed on either the Employee or [Liberty]." (Id.). If the issue between the employee and Liberty is a Legal Dispute,[1] "the Employee or [Liberty] may decide to go to the next step of Solutions—Mediation." (Id.).

---

[1] "Legal Dispute" is a defined term that covers "any disagreement between an Employee and the Company regarding the interpretation or scope of [the Solutions] Program," and "any contested matter or issue between an Employee and the Company relating to the employment of an Employee," along with "any other matter related to the relationship between an Employee and the Company including . . . claims of discrimination based on . . . sex . . . or disability." (Solutions Program ¶ 20(R)).

2

During the Mediation step, "a Mediator will work with the Employee and [Liberty] to try to resolve a Legal Dispute between them." (Solutions Program ¶ 2(C)).  Although the mediator "may propose solutions, he or she does not make a decision that is imposed on the Employee or [Liberty]." (Id.).  The Solutions Program provides that, if mediation is unsuccessful, "the Employee or [Liberty] may decide to use the next step of Solutions—Arbitration." (Id.).

During the final step of the dispute resolution process—Arbitration—"an Arbitrator makes a final and binding decision, much like a judge would do in court, after hearing from the Parties who have a Legal Dispute." (Solutions Program ¶ 2(D)).  The Solutions Program specifically states that arbitration is the "final forum" for any Legal Dispute.  (See id. ¶ 6).  In addition, the Solutions Program provides:

> By agreeing to the Solutions Program, the Employee and the Company are waiving their right to seek relief in a court for any Legal Dispute, including any statutory claims, and are also waiving their rights to a jury trial.

(Id. ¶ 2(E)).

As a condition to their continued employment with Liberty, all non-union employees were asked to sign an agreement (the "Agreement") indicating their understanding of and agreement to the Solutions Program. (Doc. #14 Ex. B ("Agreement")).[2]

---

[2] In his affidavit, plaintiff states "[e]ight months after [he] became employed by defendant and not 'as a condition of his employment with Liberty,' [he] signed [the] Agreement." (Doc. #17 ("Pl. Aff.") ¶ 2).  Nevertheless, the Solutions Program states, "[t]he legal consideration provided to an Employee by [Liberty] for this Program (and any modification of this Program) includes, but is not necessarily limited to . . . the Employee's employment or continued employment with the Company."  (See Solutions Program ¶ 19).

3

II.     Plaintiff's Invocation of the Solutions Program and Termination

Plaintiff was employed by defendant as a warehouse supervisor.  On June 15, 2018, approximately eight months after he became employed by defendant, plaintiff signed the Agreement.[3]

During his employment, plaintiff was responsible for supervising a female employee who he claims was insubordinate, rude, and insulting to him.  Plaintiff alleges that, when he attempted to discipline the female employee, neither his supervisor nor defendant's human resources office supported plaintiff's efforts to discipline the female employee.  According to plaintiff, defendant's gender-based failure to discipline the female employee caused him significant stress and ultimately contributed to the conditions which caused defendant to terminate him.  Therefore, plaintiff sought to invoke the Solutions Program to address defendant's allegedly discriminatory practices.

First—as part of the Open Door step—plaintiff informed his supervisor that he was concerned with the way the female employee was behaving, and that he perceived the employee was being treated more favorably than he was based on her gender.  According to plaintiff, no investigation was conducted.  Plaintiff then took his dispute to the second step—HR Facilitation.  During HR Facilitation, plaintiff had "several discussions and meetings regarding [plaintiff's] issues" with Artie Yanacco, the HR Manager.  (Pl. Aff. ¶ 3).  According to plaintiff, Yanacco "initiated no investigation and suggested/implemented no resolution."  (Id.).  Thereafter, plaintiff again raised his concerns with subsequent supervisors—Anthony Scachilli and Michael

---

[3]     It is unclear when plaintiff began working for defendant.  In the AC, plaintiff alleges he "worked for defendant for more than 25 years."  (Doc. #5 ("AC") ¶ 6).  In his affidavit, however, plaintiff states he signed the Agreement to resolve all disputes through the Solutions Program eight months after he became employed by defendant.  (Pl. Aff. ¶ 2).  Since plaintiff signed the agreement June 15, 2018, plaintiff's affidavit would suggest he began working for defendant in approximately October 2017.

4

McNally.  McNally held a meeting with plaintiff, Yanacco, and the female employee, during which McNally "declared a clean start for everyone."  (Id.).  Shortly after that meeting, plaintiff again reported to Yanacco that the employee's behavior continued.  But, according to plaintiff, nothing was done to address his concerns.

At no point did plaintiff decide to take his dispute to the final two steps of the Solutions Program: Mediation and Arbitration.

Instead, plaintiff claims his health "continued to decline" through 2019 and he was "out of work between October 2019 and April 2020."  (Pl. Aff. ¶ 3).  Plaintiff states that "[w]hile [he was] was out on disability, management claimed it could not discuss anything relating to my gender bias issues with me."  (Id.).

Defendant terminated plaintiff in April 2020.  On December 14, 2020, plaintiff commenced this action.

## DISCUSSION

I.    Construing the Motion as a Motion to Compel Arbitration

Depending on the facts and arguments presented, a motion to dismiss based on an arbitration agreement may be treated as a motion to compel arbitration.  See Wabtec Corp. v. Faiveley Transp. Malmo AB, 525 F.3d 135, 139–40 (2d Cir. 2008).[4]  The motion must either "explicitly or implicitly ask[] the court to order arbitration."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).

Although defendant filed its motion as one to dismiss or alternatively to stay the action and compel arbitration, defendant's motion explicitly "requests the Court grant its motion to

---

[4]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

compel arbitration and dismiss the action or, alternatively, to stay the action pending arbitration." (Doc. #13 at ECF 17).[5] Moreover, defendant argues plaintiff's claims must be arbitrated, sets forth a motion to compel standard, and engages in a lengthy analysis supporting its assertion that arbitration should take place here.

Accordingly, the motion to compel arbitration standard applies.

II.     Standard of Review

"In the context of motions to compel arbitration brought under the [FAA] . . . , the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003). Therefore, the Court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d at 229.

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). "This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." Id. (emphasis in original). Once that is established, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010). The party opposing arbitration "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."

---

5     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).  If plaintiff raises a genuine issue of fact, the court must "proceed summarily to the trial thereof."  9 U.S.C. § 4.

III.	Arbitration Should Be Compelled Here

Defendant argues the Court should compel arbitration because the issues presented by plaintiff are "gateway procedural disputes" that should be decided by the arbitrator.

The Court agrees.

A.	Applicable Law

In deciding whether to compel arbitration, a court must determine (i) whether the parties agreed to arbitrate; (ii) if so, the scope of the agreement to arbitrate; (iii) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (iv) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).  "While a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide, . . . an arbitrator presumptively resolves issues of contract interpretation and arbitration procedures."  Duran v. J. Hass Grp., L.L.C., 531 F. App'x 146, 147 (2d Cir. 2013) (summary order).  Specifically, questions concerning "time limits, notice, and other procedural issues 'which grow out of the dispute and bear on its final disposition,' are presumptively for an arbitrator to decide."  Raymond v. Mid-Bronx Haulage Corp., 2017 WL 9882601, at *4 (S.D.N.Y. June 10, 2017) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. at 83–84).  "'[G]ateway procedural disputes' arising under the arbitration agreement—such as whether a prerequisite to arbitration

has been fulfilled or whether an arbitration demand is timely—are matters for the arbitrator."

Univ. Consultation & Treatment v. Loc. 1199 United Healthcare Workers E. SIEU, 2015 WL

9077249, at *2 (S.D.N.Y. Dec. 16, 2015).

    B.    Application

Plaintiff does not contest that he entered into a valid arbitration agreement, that his claims fall within the scope of the arbitration agreement, or that Congress has not evinced an intent to preclude arbitration of claims under the ADA or Title VII.  Plaintiff argues only that defendant materially breached the arbitration agreement, and therefore waived its ability to enforce the agreement, by failing to engage in the first two steps of the Solutions Program.

The Court is not persuaded.  Rather, defendant has carried its initial burden of demonstrating by a preponderance of the evidence that a valid arbitration agreement exists, and the remaining question—whether defendant has materially breached the Solutions Program thereby waiving its right to arbitrate—is a gateway procedural dispute to be decided in the first instance by the arbitrator.

Plaintiff argues defendant materially breached the Solutions Program, and under general principles of contract law, is therefore not entitled to enforce the arbitration clause contained therein.  But "[plaintiff's] attempt to create a substantive exclusion from arbitration finds no support in the caselaw."  Univ. Consultation & Treatment v. Loc. 1199 United Healthcare Workers E. SIEU, 2015 WL 9077249, at *2.  Instead, the Supreme Court's decision in John Wiley & Sons, Inv. V. Livingston, 376 U.S. 543 (1964), is instructive.  In that case, the union sought to compel arbitration on behalf of an employee under a collective bargaining agreement. In opposing the motion to compel, the employer argued that the employee's claim was not arbitrable because the employee had not timely filed his grievance and had not pursued its

8

resolution through the grievance procedure.  Id. at 556 & n.11.  The Court rejected the employer's argument, holding "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  Id.; see also id. at 559 ("[P]rocedural disagreements [are] aspects of the dispute which called the grievance procedures into play.").  Here, defendant's alleged failure to engage in the first two steps of the Solutions Program similarly presents a gateway procedural dispute for the arbitrator to decide.

This case is not at all like Nadeau v. Equity Residential Properties Mgmt. Corp., in which this Court declined to compel arbitration based on the defendant employer's breach of an arbitration agreement.  251 F. Supp. 3d 637, 642 (S.D.N.Y. 2017).  Specifically, the employer in that case initially refused to arbitrate after the plaintiff filed a formal arbitration demand with the American Arbitration Association.  Later, after plaintiff filed suit, this Court denied the employer's motion to compel arbitration, holding that "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration.  [Defendant] cannot compel [plaintiff] to honor an arbitration agreement of which it is itself in material breach."  Id. at 642 (citing Brown v. Dillard's, Inc., 430 F.3d 1004, 1006 (9th Cir. 2005)).

In contrast here, plaintiff does not argue defendant breached the agreement to arbitrate.  Rather, the crux of plaintiff's argument is that defendant failed to satisfy conditions precedent to arbitration by refusing to follow the multi-step procedures outlined in the Solutions Program.  This is merely a gateway procedural dispute, not an outright refusal to participate in arbitration.

Accordingly, the Court finds and concludes that plaintiff agreed to arbitrate and thus the arbitration agreement is valid and enforceable.

IV.     Stay Pending Arbitration

It is settled law in this Circuit that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). When, as here, a defendant requests that an action be dismissed and requests a stay in the alternative, the Court "has discretion in determining whether to stay or dismiss the case pending arbitration." Worthington v. JetSmarter, Inc., 2019 WL 4933635, at *8 (S.D.N.Y. Oct. 7, 2019).

The Court, in an exercise of its discretion, concludes this action should be stayed rather than dismissed.

Accordingly, this matter is stayed pending the completion of arbitration.

## CONCLUSION

The motion to compel arbitration is GRANTED. The parties are ORDERED to arbitrate their dispute pursuant to the terms of the Solutions Program.

This action is STAYED pending arbitration.

The Clerk is instructed to terminate the motion. (Doc. #12).

The Clerk is further instructed to administratively close this case, without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.[6]

Dated: August 23, 2021
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[6] See Zimmerman v. UBS AG, 2018 WL 4054860, at *6 (S.D.N.Y. Aug. 24, 2018), appeal dismissed, 789 F. App'x 914, 915-16 (2d Cir. 2020) (summary order) ("The district court's administrative closure of the case does not constitute a final decision: there is no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.").